FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

2014 JAN 23  PM 4: 07

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**LORNA ALLBRITAIN,**
                    **Plaintiff,**

-vs-                                            Case No.  A-12-CA-431-SS

**THE TEXAS DEPARTMENT OF INSURANCE,**
                    **Defendant.**

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Texas Department of Insurance's Motion for Summary Judgment [#16], Plaintiff Lorna Allbritain's Response [#17], and Defendant's Reply [#18].  Having considered the documents, the case as a whole, and the governing law, the Court now enters the following opinion and orders.

### Background

Plaintiff Lorna Allbritain was employed by Defendant Texas Department of Insurance (TDI) until she was fired June 22, 2011.  According to Allbritain, she "was terminated by TDI on June 21, 2011, under the auspices of being discharged for committing insurance fraud on an insurance claim involving her home, and using a TDI fax machine to submit documents to her insurance company as part of her alleged fraud." Pl.'s Response [#17], at 2.

Prior to her termination, Allbritain was being investigated for fraud.  The investigation related to allegations Allbritain, in concert with her husband, Anthony, had invoiced State Farm for water damage repair on her house by using fictitious companies to receive insurance payments

intended for repairs.  State Farm filed an insurance fraud complaint with the Fraud Unit of TDI, which was investigated in 2011 by fraud investigator Cary Decuir.  Decuir concluded Allbritain submitted materially false information to State Farm as part of a scheme to defraud the insurance company.  On June 21, 2011, Decuir reported his findings to TDI executive administration, including Chief of Staff Karen Phillips, who had the final firing authority regarding Allbritain.  Decuir told Phillips he was about to present a request for a felony arrest warrant for insurance fraud for Allbritain.  Based on this information, Phillips says she made the decision to terminate Allbritain for allegedly engaging in behavior that resulted in arrest for insurance fraud, and for violating policy by using agency resources to do so.  Phillips claims she was concerned about the credibility of the agency and the security risk if Allbritain, who as an information technology supervisor had access to TDI's confidential information, remained employed while being criminally prosecuted for insurance fraud.

On June 22, 2011, Allbritain was fired, and on June 23, 2011, Decuir submitted a Probable Cause Affidavit to the Justice of the Peace for Precinct 3 of Williamson County, who determined there was probable cause for an arrest warrant.  The arrest warrant was issued the same day. Allbritain was arrested on June 26, 2011, and on November 3, 2011, a Williamson County grand jury indicted Allbritain on three counts of insurance fraud.  On September 23, 2013, the criminal charges against Allbritain were ultimately dismissed.

Allbritain does not dispute this time line, but does dispute whether the fraud investigation was legitimate and whether she was fired for the reason TDI claims.  First, she does not think she committed the alleged insurance fraud and considers Decuir's investigation to be a "sham."  She

further disputes the true reason for her firing was the insurance fraud allegation and impending arrest warrant. Rather, she contends she was fired for other reasons.

In her complaint filed on May 16, 2012, Allbritain first asserts she was fired because she is African American and alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII). Second, she claims she was fired because of her age and asserts violations of the Age Discrimination in Employment Act of 1967 (ADEA). Third, she contends she was fired as retaliation for complaining about discrimination in the workplace. Fourth, Allbritain brings causes of action for defamation and defamation per se. Fifth, she claims TDI was negligent in its investigation of her discrimination claims. Finally, she asserts intentional infliction of emotional distress.

On November 15, 2013, TDI filed for summary judgment on all of Allbritain's claims. Allbritain filed a response, and TDI filed its reply, making the motion ripe for consideration. The Court now considers TDI's motion for summary judgment, and for the reasons described below, GRANTS it in its entirety.

**Analysis**

### I.   Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all

inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

II.     **Application**

A.      **Claims of Age Discrimination, Defamation, Negligence, and Intentional Infliction of Emotional Distress**

TDI first moves for judgment on the claims of age discrimination under the ADEA, and the state law claims of defamation, negligence, and intentional infliction of emotional distress on the grounds they are barred by sovereign immunity.  The Eleventh Amendment to the United States Constitution bars suits brought in federal court against a state.  U.S. CONST. amend. XI.  Absent waiver, the immunity afforded by the Eleventh Amendment applies regardless of the relief sought, and this immunity extends to state agencies.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  There appears to be no dispute TDI is a state entity protected by the Eleventh Amendment.  *See* Compl. [#1], at 2 ("Defendant, [TDI], is a governmental entity of the State of Texas . . . .").

The Supreme Court has established claims against the state under the ADEA are barred by sovereign immunity.  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 67 (2000) (holding the ADEA did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals); *Simon v. Tex. Rehab. Comm'n*, 66 F. App'x 525, at *1 (5th Cir. 2003) (unpublished) (same).  Texas courts also have concluded the state law claims brought by Allbritain are barred by sovereign immunity.  *See De Mino v. Sheridan*,176 S.W.3d 359, 367–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (defamation claims); *Brown v. Montgomery Cnty. Hosp. Dist.*, 905 S.W.2d 481, 483 (Tex. App.—Beaumont 1995, no writ) (negligent supervision claims); *Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d 374, 382 (Tex. App.—Eastland 2006, no pet.) (intentional infliction of emotional distress claims).  While the Texas Tort Claims Act waives governmental immunity for

certain negligence claims, those are not applicable to Allbritain's claims.  *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

Allbritain spends no time in her response rebutting these arguments or providing any basis for finding these claims are not barred by sovereign immunity.  Indeed, Allbritain seems to concede the state laws claims.  *See* Resp. [#17], at 17 ("As illustrated herein, ample evidence exists to support [Allbritain's] claims of discrimination and retaliation, regardless of whether her state law claims are barred by immunity or not.").  Because Allbritain's claims under the ADEA and her state law claims for defamation, negligence, and intentional infliction of emotional distress are barred by sovereign immunity, the Court GRANTS TDI's motion for summary judgment with respect to these claims.

**B.**     **Title VII Race Discrimination Claim and Related Hostile Work Environment Claim**

To survive a motion for summary judgment on a claim of racial discrimination, a plaintiff must first establish a *prima facie* case by a preponderance of the evidence.  *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (applying this analysis in the Title VII context).  A *prima facie* case of discrimination may be established through evidence demonstrating the plaintiff: (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse action; and (4) either was replaced by someone outside the protected class or was treated less favorably than other similarly situated persons outside the protected class.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).  In the discrimination context, "'[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy*, 492 F.3d at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).  Once a *prima facie* case of discrimination is established, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for its actions. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). If the defendant meets this burden, the plaintiff must then offer sufficient evidence to raise a genuine issue of material fact as to whether the defendant's reasons are either: (1) false or unworthy of credence and, thus, merely a pretext for discrimination; or (2) true, but only a part of the motivation of which discriminatory animus was also a part. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Allbritain alleges discrimination based on four different theories: (1) denial of participation in the telecommute program; (2) termination of employment based on alleged commission of insurance fraud when those allegations were false; (3) refusal to permit Allbritain to run out her vacation and compensatory time after she was terminated; and (4) failure to reassign her support staff.

### 1.    Denial of participation in the telecommute program

With respect to the denial of participation in the telecommute program, this claim fails first because it does not constitute an "adverse employment action." Federal courts have repeatedly held denying an employee's request to telecommute is not an "adverse employment action" for the purpose of Title VII. *Lewis v. CareCore Nat'l LLC*, No. 11-CV-00204-RBJ-KLM, 2012 WL 3704985, *9 (D. Colo. May 30, 2012) ("Even if Plaintiff was inconvenienced by having to commute to work as opposed to telecommute from home, a mere inconvenience is not an adverse employment action.") (internal citations omitted); *Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007) (unpublished) (denial of request to telecommute was not an adverse employment action for the purposes of Title VII, noting a "determination affecting Brockman's ability to work where she chooses is not the type of ultimate decision that this court has required for a prima facie case of

discrimination"); *Homberg v. UPS*, No. 05-2144-KHV, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) (noting "district courts in other jurisdictions have consistently held that the denial of a request to work from home is not adverse employment action"); *Haas v. Zurich N. Am.*, No. 05 C 1421, 2006 WL 2849699, at *4 (N.D. Ill. Sep. 29, 2006) ("The fact that [plaintiff's supervisor] did not permit Ms. Haas to work from home every time she requested is also not an adverse employment action."); *Smith v. AVSC Int'l Inc.*, 148 F. Supp. 2d 302, 313 (S.D.N.Y. 2001) (concluding "not allowing [plaintiff] to work from home . . . [did] not constitute adverse employment actions as a matter of law"). The Fifth Circuit has not directly addressed denial of telecommuting in this context, but it has held a lateral transfer does not constitute an adverse employment action even when the transfer resulted in a longer commute. *Cooper v. United Parcel Serv., Inc.*, 368 F. App'x 469, 474–75 (5th Cir. 2010) (unpublished) (increasing commute by twenty-five minutes each way does not make the transfer an adverse employment action). Because the refusal to be allowed to telecommute is not an adverse employment action, Allbritain's race discrimination claim fails under her first theory.

2.     **Termination of employment based on alleged commission of insurance fraud when those allegations were false**

Allbritain contends the investigation of insurance fraud was all a "sham," and the real reason for her firing was based, at least in part, on racial discrimination. In other words, Allbritain argues TDI fired her because she was African American and manufactured a "sham" investigation in order to provide a pretext. First, Allbritain's claim fails because she fails to provide summary judgment evidence she was treated less favorably than other similarly situated persons outside the protected class. Allbritain was employed as a supervisor at TDI. After becoming aware of a criminal

-8-

investigation and an impending warrant, Karen Phillips decided to terminate Allbritain. *See* Def.'s Mot. Summ. J. [#16-2], Ex. 2 (Phillips Aff.), at 1. Allbritain points to no other similarly situated employee who, despite such circumstances, was allowed to remain employed. *See* Def.'s Mot. Summ. J. [#16-1], Ex. 1 (Allbritain Depo.), at 206:21–207:4. In her affidavit, Karen Phillips states she does not know anyone else arrested for insurance fraud who remained employed at TDI. *See* Phillips Aff., at 2. The only other employees Allbritain discusses who she claims were treated differently than her were Michael Tseng and Fred Ramirez, but she refers to those two in the context of her third theory, the refusal to allow her to run out her compensation and vacation time. Nevertheless, to the extent Allbritain is comparing herself to Tseng and Ramirez for the purposes of her second theory of discrimination, Allbritain fails to show how these employees were similarly situated to her for the same reasons discussed below in Part II(B)(3). Because Allbritain fails to provide evidence she was treated less favorably than others similarly situated to her, her claim fails.

Alternatively, assuming Allbritain could meet her burden and establish a prima facie case of discrimination on this second theory, TDI articulates a legitimate, non-discriminatory reason for its actions. Namely, TDI presents evidence it reasonably believed Allbritain engaged in behavior which was about to result in an arrest for insurance fraud and used agency resources to accomplish her scheme. Indeed, the day after her termination a Justice of the Peace signed a Probable Cause Affidavit and issued an arrest warrant for Allbritain. *See* Def.'s Mot. Summ. J. [#16-3], Ex. 3 (Decuir Aff.), at 1. Allbritain was eventually arrested and indicted for insurance fraud. While these charges were eventually dropped, the focus of the Court's inquiry is on the motivation of TDI in terminating Allbritain. Whether the allegations against her are true and whether she actually committed insurance fraud is of no consequence to the Court's instant determination. In addition,

Karen Phillips, the TDI employee with the final firing authority over Allbritain, stated she made the decision to terminate Allbritain's employment because she was concerned about the credibility of the agency and the security risk if Allbritain, who as an information technology supervisor had access to TDI's confidential information, remained employed while being criminally prosecuted for insurance fraud. *See* Phillips Aff., at 1. The Court concludes TDI satisfies its burden of articulating a legitimate, non-discriminatory reason for Allbritain's firing.

The burden now shifts back to Allbritain, who must raise a genuine issue of material fact as to whether TDI's stated reason for firing her was merely a pretext for discrimination. Allbritain contends this stated reason was the result of a "sham investigation," and "if a thorough and non-negligent investigation had been truly done, the charges never would have been accepted by Williamson County to begin with, and [Allbritain] never would have been terminated." Pl.'s Resp. [#17], at 17. Allbritain supports this contention of a negligent investigation with nothing more than her own affidavit, but to the extent it has merit, she still fails to raise a genuine issue of material fact at to whether TDI's stated reason for firing her was merely a pretext for discrimination. Allbritain fails to consider "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision." *Bryant v. Compass Groups USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). "Management does not have to make proper decisions, only non-discriminatory ones." *Id.*; *see also Pineda v. United Parcel Serv. Inc.*, 360 F.3d 483, 489 (5th Cir. 2004) (noting "to establish that an investigation into an alleged violation of a workplace policy was a pretext for discrimination it is not sufficient for the plaintiff to present evidence that the investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion").

Allbritain fails to present evidence the decision to fire her because she was under criminal investigation for insurance fraud amounted to treatment less favorable than anyone similarly situated, and she further fails to rebut TDI's evidence of a legitimate, non-discriminatory reason for the termination of her employment. Allbritain's race discrimination claim fails under her second theory.

### 3.      Refusal to permit Allbritain to run out her vacation and compensatory time after she was terminated

Allbritain alleges TDI has a policy by which, with the approval of the employee's manager and the Director of Human Resources, an employee separating from employment with TDI may remain on the payroll to use up to eighty hours of compensatory time prior to separation. *See* Pl.'s Resp. [#17], at 6. Allbritain claims she was not allowed this compensatory time based upon her race and age. *Id.* She points to other employees who were treated differently than her. First, she alleges an employee named Michael Tseng "admitted to ejaculating and urinating on boxes and also ejaculating on boxes that belonged to female employees, then telling them about it." *Id.* According to Allbritain, Tseng was allowed to run out his time. *Id.* at 6–7.

Second, she claims in sexual harassment cases at TDI, the accused employee is put on paid leave while an investigation is done if they do not admit guilt. *Id.* at 7. Even when the accused admit guilt, they are sometimes allowed to stay, says Allbritain. *Id.* Allbritain then somehow reasons: "in criminal acts committed by male employees, they are allowed to stay and run out their comp time, but in [Allbritain's] case, she was not, based upon racism against African Americans." *Id.* Allbritain cites Fred Ramirez as an example of a male employee who engaged in some sort of sexual harassment but was still allowed to maintain employment.

First, Allbritain provides no support for the argument refusal to allow her to run out her vacation and compensatory time after her termination constitutes an "adverse employment action." She does state this allowance requires the approval of the employee's manager and the Director of Human Resources, which indicates there are some sort of standards regulating whether a terminated employee may run out her vacation and compensatory time. Allbritain does not tell the Court how this process works, making it difficult to assess her claim. With no supporting case law, the Court concludes the refusal to allow an employee to run out her vacation and compensatory time does not amount to an "ultimate employment decision" analogous to "hiring, granting leave, discharging, promoting, or compensating."

Alternatively, Allbritain's claim still fails, however, because she fails to provide sufficient evidence demonstrating she was treated less favorably than other similarly situated persons outside the protected class. First, there is Michael Tseng, who according to Allbritain, worked for her. *See* Allbritain Depo., at 226:4–7. Allbritain says Tseng admitted to urinating on the carpet and ejaculating on boxes at work. *Id.* at 227:23–25. Tseng was then "disciplined" and allowed to "run out his comp time." *Id.* at 228:16–23.

The ways in which Allbritain and Tseng are not similarly situated are many. First, Tseng worked for Allbritain, so they did not maintain the same position with TDI. Second, Allbritain's alleged violations were for insurance fraud, while Tseng apparently was urinating on carpets and ejaculating on boxes. Third, Allbritain was under criminal investigation at the time of her termination, while Allbritain has no idea whether Tseng was under a similar criminal investigation. *Id.* at 228:24–229:1. Fourth, Allbritain was terminated from her position while Tseng was "disciplined." There is no further indication of what happened to Tseng other than he was

-12-

disciplined.  Finally, Tseng, claims Allbritain, was allowed to run out his comp time, but since Allbritain never actually explains what goes into the decision to allow someone to run out their vacation and compensatory time after being terminated, the Court cannot even analyze whether the decision to allow Tseng to run out his time and the refusal to allow Allbritain to do the same was based on some sort of established procedure or, as Allbritain wants the Court to believe with no summary judgment evidence to support it, it was based on the fact Allbritain is an African American.

Second, Allbritain compares herself to Fred Ramirez.  While Ramirez was a supervisor like Allbritain, he supervised a different team and had different job functions than Allbritain.  *Id.* at 131:21–132:5.  Allbritain generally states Ramirez engaged in sexual harassment at work against a co-worker, and there was some sort of internal investigation regarding the matter.  *See id.* at 131–133.  While there is nothing else in the summary judgment record elaborating on this argument, Allbritain seems to suggest in her Response Ramirez was given a thirty day suspension, brought back, and demoted after admitting to "what he did."  Pl.'s Resp. [#17], at 7.

Again, even based on Allbritain's limited and unclear arguments, there are plenty of discernible differences between Allbritain and Ramirez.   First, they had different job functions. Second, Allbritain was facing allegations of insurance fraud while Ramirez supposedly admitted to sexual harassment.  Third, Allbritain was under a criminal investigation while there is no evidence supporting anything beyond an internal investigation of Ramirez.  Fourth, Ramirez was suspended, brought back to work, and demoted, while Allbritain was terminated.  Finally, Allbritain does not even allege Ramirez was allowed to run out his vacation or compensatory time.  Indeed, it would appear he was retained.  Allbritain, on the other hand, was fired, which is presumably a prerequisite to being allowed—or refused—the opportunity to run out vacation and compensatory time.

Allbritain fails to show the Court how the refusal to allow her to run out her vacation and compensatory time after being fired was an "adverse employment action," but more importantly, she fails to provide evidence demonstrating she "was treated less favorably than other similarly situated persons outside the protected class." Allbritain's race discrimination claim fails under her third theory.

### 4.    Failure to reassign her support staff

Allbritain alleges she requested on a number of occasions if an employee, Beatrice Rios, could be reassigned to her team, so she could be her support in the file room. According to Allbritain, her requests were denied because she is African American, and she never received the support she claimed she needed. Allbritain's claims again fail because failure to reassign her support staff is not an "adverse employment action." In *Halloway v. Milwaukee Cty.*, the Seventh Circuit rejected a plaintiff's claim he was not provided support staff as a basis for an adverse employment action in the ADEA context. As the court put it,

> [Plaintiff] did not suffer from an employment action that is typically considered an adverse employment action under the ADEA: He was not fired or demoted, nor was his pay decreased. Instead, he complains that he was briefly assigned to offices he did not like, that he was rotated into a small claims/floater position created just for him, and that *he was not provided adequate support staff* or the materials necessary to perform his job. While such actions, if severe enough, may be actionable, "a materially adverse change in terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 134 (7th Cir. 1993).

*Halloway v. Milwaukee Cty.*, 180 F.3d 820, 826–27 (7th Cir. 1999) (emphasis added).

Similarly, this Court finds Allbritain's claim she was denied requested support staff does not amount to an adverse employment action for her Title VII claim. There is nothing in the summary judgment record to indicate the denials, if true, were anything more than an inconvenience. Indeed,

-14-

the only evidence in the summary judgment record of any denial is Allbritain's affidavit, which merely states she repeatedly asked for a new assistant, but the Division Head, Doug Slape, would never agree to it. Allbritain Aff., at 3. There is no statement indicating, however, the degree to which these denials impacted her work. In her Complaint, she contends she "had numerous functions that she was tasked with and it made it very difficult not to have a support person." Compl., at 9. While there is nothing in the record to support this contention, even if it were true, the denial of a support employee, which made her job very difficult, does not rise to rise to the level of an "ultimate employment decision," which would amount to an adverse employment action. Allbritain's race discrimination claim fails under her fourth theory.

Although Allbritain never clearly states she is asserting a discrimination claim based on a hostile work environment theory, she makes passing references to a hostile working environment, and her allegations could be construed as asserting such a claim. To the extent Allbritain is alleging a hostile work environment claim, she must show (1) she belonged to a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her race, and (4) the harassment affected a term, condition, or privilege of her employment. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

"For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive." *Hockman v. Westward Comm'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). In determining whether alleged harassment is objectively abusive, the Court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, whether it unreasonably interfered with the employee's performance, and whether it undermined the employee's workplace

-15-

competence. *Id.* at 325–26. The Fifth Circuit has held a viable harassment claim may range from "a single incident of harassment, if sufficiently severe," to "a continuous pattern of much less severe incidents of harassment." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

Allbritain's allegations and the summary judgment record do not support a hostile work environment claim. In her deposition, Allbritain stated she did not think anyone at work ever said anything derogatory to her with respect to her race, nor could she remember any derogatory remarks with respect to her age. *See* Allbritain Depo., at 143:4–144:3. Discovery in this case closed on October 18, 2013, and Allbritain has provided nothing more than her own affidavit, the dismissal papers on her insurance fraud charges, and an unexplained email Allbritain wrote to Mr. Slape about a dispute Allbritain had with a co-worker as summary judgment evidence. The latter two items have seemingly nothing to do with race-based harassment. Her affidavit does not support any claim for unwelcome harassment, much less unwelcome harassment based on her race. At most she points out she was fired for a sham investigation involving the allegations of insurance fraud. Then, in a conclusory fashion with zero support, states: "Thus, it can only be concluded that the fraud charges were done in discrimination and retaliation to me, which I believe to have been made with malice aforethought for the purpose of my ultimate destruction." Allbritain Aff., at 4. This statement alone is insufficient to support a hostile work environment claim, and to the extent she is even asserting such a claim, the Court GRANTS summary judgment in favor of TDI.

## C.      Retaliation Claim

Retaliation claims under Title VII are analyzed under the burden shifting framework applicable to Title VII discrimination claims. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996) (applying this analysis to Title VII retaliation claims). Therefore, to survive a motion for

summary judgment, a plaintiff must first establish a *prima facie* retaliation case by a preponderance of the evidence. *McDonnell–Douglas*, 411 U.S. at 802–04. The plaintiff must prove three elements: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link existed between the protected activity and the adverse employment action. *Seaman*, 179 F.3d at 301. Once the plaintiff makes out this prima facie case, the defendant must give a legitimate, nondiscriminatory reason for its adverse action. *Id.* If the defendant meets this burden, the plaintiff must then offer sufficient evidence to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013).

Identifying Allbritain's claimed "protected activity" is not altogether clear. First, Allbritain says she filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC). *See* Compl. [#1], at 11. This EEOC complaint, however, was filed August 10, 2011, two months after her termination. *See* Allbritain Depo., at 153:21–154:15. Because the termination occurred before the EEOC complaint, this "protected activity" could not possibly form the basis of a retaliation claim due to the lack of a causal link.

In her Response, Allbritain indicates her retaliation claim is based on more than just the EEOC complaint. Frustratingly, Allbritain does not actually describe to the Court the specific nature of her claimed "protected activity," instead merely arguing: "Title VII forbids termination not just because an employee filed an EEOC claim, but also because an employee complained to their employer or other covered entity about discrimination on the job, which [Allbritain] certainly did, as set forth in Exhibit A and Exhibit B, prior to her termination." Resp. [#17], at 17. Where in Exhibits A and B these allegations of other complaints appear is left to the Court to find. Exhibit

A presumably refers to Allbritain's affidavit.  In her affidavit, Allbritain merely states, "During my employment with [TDI], I was also retaliated against for the aforementioned complaints and requests, as evidenced by [TDI] falsely filing fraud charges against me . . . ."  Allbritain Aff., at 3. These "aforementioned complaints and requests" appear to relate generally to requests to have her pay increased (which was granted), and her request for more support staff. Allbritain, however, does not explain how these complaints and requests constitute "protected activity."  In addition, she provides no evidence of a causal link between these complaints and requests and her eventual termination, much less any evidence of "but-for" causation.  *See Nassar*, 133 S. Ct. at 2533 (requiring "but-for" causation for retaliation claim).  Therefore, the Court GRANTS summary judgment in favor of TDI regarding Allbritain's retaliation claim.

### Conclusion

Accordingly,

IT IS ORDERED that Defendant Texas Department of Insurance's Motion for Summary Judgment [#16] is GRANTED;

IT IS FINALLY ORDERED that the Status Conference scheduled for Friday, February 7, 2013, at 9:00 AM is CANCELLED.

SIGNED this the *23rd* day of January 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE